OPINION OF THE COURT
Patrick J. McGrath, J.
On June 6, 2000, the Rensselaer County District Attorney’s Office requested that the court appoint a special prosecutor to *443 investigate allegations of wrongdoing by county employees in the Dirk Van Ort case. The allegations of wrongdoing by county employees were contained in a sworn affidavit by Christina K. Mahoney, director of personnel for Rensselaer County, dated May 30, 2000. The District Attorney indicated in his letter that based upon his relationship with some of the named individuals there was a demonstrated conflict with his office pursuing the investigation. Based upon the District Attorney’s request the court did appoint a special prosecutor on June 13, 2000 to conduct a criminal investigation “regarding possible criminal misconduct by Rensselaer County employees and/or individuals acting in concert therewith in connection with the case of People v Victor Cipolla, People v Susan Martin and People v Dirk Van Ort, Rensselaer County Indictment No. B-10609, B-10610 and B-10611.”
A second sworn affidavit of Christina K. Mahoney dated November 8, 1999 alleged further wrongdoing by county employees. Since the same conflict existed with the Rensselaer County District Attorney’s Office, the court issued a supplemental order dated July 14, 2000 authorizing the special district attorney to investigate the claims of alleged wrongdoing contained in Christina K. Mahoney’s sworn affidavit of November 8, 1999. On August 7, 2000, the court approved the special prosecutor’s request to hire an investigator, and necessary secretarial staff. On January 30, 2001, the court approved the special prosecutor’s request to hire an associate attorney.
A special grand jury was convened for the purpose of the special prosecutor to conduct his investigation. As a result of the investigation a number of indictments were handed up. Indictment MK-1 charged defendant, Henry Zwack, with seven counts of perjury in the first degree, a D felony, in violation of section 210.15 of the Penal Law. Indictment MK-2 charged defendant, Henry Zwack, with three counts of peijury in the first degree in violation of section 210.15 of the Penal Law. The grand jury also returned one no bill for one count of peijury in the first degree in connection with indictment MK-2.
Prior to trial, the court dismissed two counts of perjury in the first degree under indictment MK-2 leaving a total of eight counts of perjury in connection with indictments MK-1 and MK-2.
Indictment MK-3 charged defendants J. James Germano, Joseph Cybulski, Daniel Ehring, Bryan Goldberger, and Henry Zwack with 49 separate charges. Included within the charges were the crimes of bribery in the third degree in violation of *444 section 200.00 of the Penal Law, a class D felony, bribe receiving in the third degree in violation of section 200.10 of the Penal Law, a class D felony, bribery in violation of section 107 (4) of the Civil Service Law, an E felony, 14 counts of official misconduct in violation of section 195.00 (1) of the Penal Law, a class A misdemeanor, four counts of obstructing governmental administration in the second degree in violation of section 195.05 of the Penal Law, a class A misdemeanor, eight counts of attempted obstruction of civil service rights in violation of section 110.00 of the Penal Law and section 106 of the Civil Service Law, a class B misdemeanor, four counts of conspiracy in the sixth degree to obstruct civil service rights in violation of section 105.00 of the Penal Law, a class B misdemeanor, eight counts of conspiracy in the fifth.degree to commit coercion in the first degree in violation of section 105.05 of the Penal Law, an A misdemeanor, eight counts of attempted coercion in the first degree in violation of sections 110.00 and 135.65 of the Penal Law, an E felony.
Prior to trial on indictment MK-3 the court dismissed 15 charges as being multiplicitous, seven counts of official misconduct in violation of section 195.00 (1), an A misdemeanor, four counts of conspiracy in the fifth degree in violation of section 105.05, an A misdemeanor, and four counts of attempted coercion in the first degree in violation of sections 110.00 and 135.65 of the Penal Law, an E felony. Left remaining were 34 charges: two D felonies, five E felonies, and 27 misdemeanors.
Indictment MK-4 charged defendants Zwack and Ehring each with one count of making an apparently sworn false statement in the second degree in violation of section 210.35 of the Penal Law, an A misdemeanor.
Indictments MK-1 and MK-2 went to trial. Prior to submitting the charges to the jury the People consented to dismiss count eight leaving seven counts of perjury in the first degree to be considered by the jury. The jury returned a verdict of not guilty on all seven counts.
Indictment MK-3 also went to trial. The jury found the defendants not guilty on all 34 remaining charges.
The remaining indictment, MK-4, was dismissed by the court in the interest of justice on September 13, 2001, concluding the special investigation.
County Law § 701 (5) provides that a special district attorney is entitled to receive “reasonable compensation” for services *445 rendered. Unlike other legislative enactments where a fee schedule is expressly set forth in the body of the statute (see, County Law § 722-b; Judiciary Law § 35), County Law § 701 leaves the amount of the fees to the sound discretion of the court (Matter of Harvey v County of Rensselaer, 190 AD2d 261 [3d Dept 1993]). The court’s discretion should be guided by two primary considerations: (1) the reasonableness of the attorney’s hourly rate, and (2) the reasonableness of the amount of time spent by the attorney on the matter. In assessing the reasonableness of the hourly rate, concerns such as the complexity of the case and the degree of expertise necessary to handle it are germane as are the prevailing fee standards in the community. However, this latter factor must be balanced against the fact that the appointed attorney is performing a public service and being compensated from public funds (Matter of Harvey v Rensselaer, supra at 265).
As far as the prevailing fee standards in the community, there is no exact comparable standard since standard fees in criminal cases are determined from a defense prospective since all prosecutors are salaried employees not being compensated on an hourly rate. The standard for criminal defense attorneys is not to charge an hourly rate for criminal cases, but rather a flat fee for representation. The amount of the flat fee is normally determined by whether or not the matter is resolved with or without a trial. This flat fee standard recognizes the fact that the preparation and trial of a criminal case requires many disparate tasks and functions for the attorney and support staff. Some may require legal expertise while others may only be ministerial in nature. To charge one hourly rate for all services rendered would not be fair and reasonable to the client. Therefore, the flat fee is the standard accepted by the criminal defense bar.
Although case law measures reasonableness on the basis of an hourly rate, there is no prohibition under County Law § 701 for determining reasonableness of fees from the standard of the defense bar within the legal community. Therefore, this court does not believe it is precluded from determining reasonableness based upon a flat fee determination considering all relevant factors of the case. The rationale for the flat fee standard should be equally applicable to the municipal client, Rensselaer County, as it is to the individual client. This is especially true in cases of extended duration involving thousands of hours of disparate service. In Matter of Harvey v Rensselaer (supra), the number of hours at issue claimed by the special *446 prosecutor was 394, substantially less than the number claimed in the present case.
An attorney who voluntarily agrees to perform a public service as special district attorney cannot and should not expect to receive as compensation the same amount or more than he would charge if acting as retained counsel. Although the time actually spent by the attorney on the case is material, it is not absolutely controlling over other circumstances which help to determine the value of the attorney’s services (Booth, Lipton & Lipton v Cassel, 51 Misc 2d 853, affd 27 AD2d 706). In determining the reasonableness of compensation for attorneys the following factors should be considered: time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyer’s experience, ability and reputation; the amount involved and benefit resulting to the client from the services; customary fee charged by the bar for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved (Matter of Freeman, 34 NY2d 1, 9). While the result reached in litigation can have little, if any, bearing upon amount of work which has been done, this has always been accepted as a proper element to be considered in determining the value of services (Randall v Packard, 142 NY 47; Gross v Moore, 14 App Div 353 [1st Dept 1897]).
The seriousness of the charges is also a factor that should be considered when determining reasonableness of fees for a special district attorney (Matter of Harvey v Rensselaer, supra at 267). The more serious the charge the greater the skill and attention that would be required. Also, the reasonableness of the amount of time spent by the attorney on the matter would be directly related to the seriousness of the charges.
Indictments MK-1 and MK-2 originally involved 10 counts of a D felony. The court dismissed two counts and one count was dismissed prior to submission to the jury leaving seven counts remaining. Count three of indictment MK-2 was no billed by the grand jury. Therefore, of the original 11 counts submitted to the grand jury only seven remained for consideration by the petit jury. Thirty-six percent of the total original charges considered by the grand jury were either dismissed or no billed prior to trial.
Indictment MK-3 originally involved two D felonies, nine E felonies, 26 A misdemeanors, and 12 B misdemeanors, the lowest level crime under the Penal Law. Therefore, approximately 78% of the original charges in indictment MK-3 involved either *447 A or B misdemeanors and 22% of the charges consisted of felonies. Of the 22% of the charges that were felonies, the majority were E felonies. Of the original 49 charges considered by the grand jury, 30% were dismissed prior to trial by the court.
Indictment MK-4 originally charged two A misdemeanors. The entire case was dismissed prior to trial in the interest of justice.
In determining the reasonableness of the fee from an hourly rate point of view, a distinction must be made between pure legal work, preparation of legal documents for filing with the court and actual court appearances, and other time-consuming tasks such as initial research, organization and review of the file, notes to the file, copying documents, travel time, and other preparatory work. A single hourly rate would not be reasonable for all the disparate acts performed by the special prosecutor. If the reasonableness of the fee is determined on an hourly basis then a blended hourly rate should be determined that would take into account the fact that many hours logged consisted of preparatory work as opposed to pure legal work. Also, in considering a reasonable hourly rate, the fact that secretarial services, which are normally encompassed in the attorney’s hourly rate, were separately billed would support a blended hourly rate.
It is obvious from the time records that the special prosecutor did a thorough and exhaustive investigation into the matters assigned. There were complex legal issues to be considered: the corroboration requirements to support a perjury charge (Penal Law § 210.50) and the materiality requirements in connection with indictments MK-1 and MK-2; the rules of evidence regarding statements of coconspirators in connection with indictment MK-3. However, complexity alone should not be a basis for determining the reasonableness of a fee; it should be the way in which the special prosecutor deals with the complexity. Of primary consideration is the decision by the special prosecutor as to which charges to prosecute always keeping in mind that it will be the petit jury that must make a final determination. Therefore, whenever possible the special prosecutor should avoid complexity that might confuse the petit jury. As far as a special prosecutor is concerned, or for that matter any prosecutor, the less complex the better when presenting proof before a petit jury. In connection with indictment MK-3 the special prosecutor framed his indictment with multiple overlapping concurrent charges. Also, there were numerous counts of attempt to commit a crime and conspiracy *448 to commit a crime which overlapped. This complexity seemed to be adverse to the special prosecutor’s case when considered by the petit jury at trial. During the course of their deliberations the jury asked for a reread and further explanation of the required elements of the charges on 12 different occasions. The overly complex nature of the charges should be a factor to consider when determining the reasonableness of any blended hourly rate or any flat fee that might be set.
The special prosecutor has submitted verification for 1,724.45 hours expended in his duties as special prosecutor. The special prosecutor’s support staff has also submitted verification of hours expended as follows: Lizabeth Harrison, associate attorney, 233.50 hours; William Kiernan, investigator, 373.5 hours; Keith Christiansen, investigator, 92.5 hours.
Robert A. Smith, Rensselaer County Attorney, has filed certain objections to proposed payment of the special prosecutor and support staff. Specifically, Mr. Smith objected to approximately 305 hours set forth by the special prosecutor in his time records.
As the court has already indicated, in cases of extensive duration and voluminous hours a flat fee should be considered when determining reasonableness in relation to the special prosecutor and the client, Rensselaer County. When the number of hours expended by the special prosecutor rises to the level it has in this case, an hourly fee payment would not be reasonable especially considering the factor that the client, Rensselaer County, has no control over the hours expended in completion of the services rendered. The county would not have the ability to limit or cap the fee to be paid as an individual client would. Therefore, in this case the court believes it is more appropriate to pay the special prosecutor a flat fee similar to a salaried district attorney of the county and a criminal defense attorney.
The court believes that a flat fee of $40,000 per jury trial would be reasonable compensation for the services rendered taking into account all of the aforementioned factors that include prevailing fee standards in the community, the seriousness of the charges, the way in which the special prosecutor dealt with the complexity of the case, the results obtained, the fact that the special prosecutor is performing a public service, and the fact that the special prosecutor is being compensated from public funds. Therefore, this court determines that the reasonable amount of compensation to be paid to the special prosecutor for services rendered for the trial of indictments *449 MK-1 and MK-2 and the trial of indictment MK-3 and the prosecution of indictment MK-4 shall be a total of $80,000.
If the court was to fix and determine the reasonableness of compensation to be paid to the special prosecutor based upon an hourly rate, then a reduction of hours must be made in proportion to the percentage of charges submitted to the grand jury by the special prosecutor that were either no billed or dismissed prior to trial. Since approximately a third of the charges were dismissed by the court or no billed, an equal percentage of hours should be subtracted from the total hours expended. This would be a reduction of 575 hours from the total amount expended leaving a remaining balance of 1,150 hours. Using a blended hourly rate of $70 per hour that takes into account all of the aforementioned factors would lead to a total fee of just over $80,000.
When considering the reasonable compensation to be paid to the special prosecutor’s support staff, associate attorney, investigators, and secretarial staff, the court would not reduce the hours expended by one third as in the case of the special prosecutor if his fee was determined based upon an hourly rate, but would simply fix an amount that the court believes to be reasonable taking into account the fact that some hours may have been expended in connection with charges that were dismissed prior to trial. Accordingly, the court would fix as reasonable compensation the following fees: Lizabeth Harrison, associate attorney, $7,500; William Kiernan, investigator, $8,000; Keith Christiansen, investigator, $2,000.
The court would also fix and determine as reasonable typing costs the amount of $1,529; copying costs, $2,314.20; postage and other expenses, $310.11; tape reproduction and copying costs by Blue Sky Studio, $1,283.04; and copying costs to Cotton Hill Studio, $244.40.